IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL L. TROUT,                    )
                                     )
                Plaintiff,           )
                                     )
        v.                           )
                                     )  Civil Action No. 10-756
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF                      )
SOCIAL SECURITY,                     )
                                     )
                Defendant.           )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this _19th_ day of September, 2011, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 7) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. <u>Jones v. Sullivan</u>, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed an application for DIB on September 14, 2006, alleging disability beginning January 1, 2006, due to post-traumatic stress disorder, asthma, sleep apnea, acid reflux, migraine headaches, depression, arthritis and joint pain. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on April 23, 2008, at which plaintiff appeared represented by counsel. During the hearing, plaintiff amended his alleged onset date of disability to September 30, 2006, because he had last worked in September 2006, and he had earned approximately $9,500 that year. (R. 25).

On May 15, 2008, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on April 15, 2010, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 36 years old as of his amended alleged onset date of disability and is classified as a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff earned two

Master's Degrees and has past relevant work experience as a mail carrier, clerk and counselor. However, he has not engaged in substantial gainful activity at any time since his amended alleged onset date of disability.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that plaintiff suffers from the severe impairments of attention deficit hyperactivity disorder, post-traumatic stress disorder, depression, asthma, sleep apnea and osteoarthritis of the knees, but those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform a range of light work with a number of other limitations. Plaintiff must avoid exposure to fumes, dust and gases and temperature and humidity extremes. In addition, plaintiff is limited to work that involves simple instructions and simple decision making, and he cannot perform work at an assembly line pace. Finally, plaintiff is restricted from work that involves intensive supervision, he must avoid interaction with the general public, and he cannot have close interaction with co-workers (collectively, the "RFC Finding").

As a result of these limitations, the ALJ determined that plaintiff could not perform his past relevant work. However,

based upon the vocational expert's testimony, the ALJ concluded that plaintiff's age, educational background, work experience and residual functional capacity enable him to make a vocational adjustment to other work that exists in significant numbers in the national economy, such as a sorter, marker or order caller. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

The Commissioner has promulgated regulations that incorporate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and

residual functional capacity. 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with his age, education, past work experience and residual functional capacity. 20 C.F.R. §404.1520(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §404.1545(a)(1); Fargnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet certain demands of jobs, such as physical, mental, sensory and other requirements. 20 C.F.R. §404.1545(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because he did not give substantial weight to the determination by the Department of Veterans Affairs ("VA") that he is disabled.[1] (R. 81-83). This argument is without merit.

A determination made by another agency regarding disability is not binding on the Commissioner of Social Security. The Social

---

[1]During plaintiff's military service in the Gulf War, his barracks were destroyed by a missile. Many individuals were killed in the attacked and plaintiff sustained injury to his knees and back. (R. 281-82). According to plaintiff, he has difficulty coping with stress as a result of that incident. (R. 282).

Security Regulations provide that:

> A decision by any nongovernmental agency or any other governmental agency about whether [the claimant is] disabled or blind is based on its rules and is not our decision about whether [the claimant is] disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that [a claimant is] disabled or blind is not binding on us.

20 C.F.R. §404.1504; see also Gifford v. Barnhart, 129 Fed. Appx. 705, 707 (3d Cir. 2005) (recognizing that an ALJ is not bound by a determination by the Pennsylvania Workers' Compensation Bureau). Although not binding, "a determination by another government agency is entitled to substantial weight." Kane v. Heckler, 776 F.2d 1130, 1135 (3d Cir. 1985). "If the ALJ reaches a contrary conclusion, the ALJ must offer an explanation of why he rejected the other agency's finding." Sell v. Barnhart, 2003 WL 22794702, at *3 (E.D. Pa. Nov. 17, 2003) (citing Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980)).

Here, the ALJ addressed the VA's determination that plaintiff is disabled, noted that he was not bound by that finding, and explained why he rejected the VA's disability determination. (R. 14-16). In so doing, the ALJ thoroughly considered the opinion of Dr. Barry Fisher, who was plaintiff's treating psychiatrist at the VA hospital, and who found that plaintiff was disabled because of his post-traumatic stress disorder. The ALJ properly determined that Dr. Fisher's opinion, upon which the VA's determination of

AO 72
(Rev. 8/82)

disability was based, was not entitled to controlling weight.[2]

Dr. Fisher completed two functional capacity assessments indicating that plaintiff was unable to meet competitive standards in numerous categories required for skilled and unskilled work. (R. 412-13, 416-17). However, Dr. Fisher's own treatment notes contradict such serious limitations, as he consistently rated plaintiff's Global Assessment of Functioning ("GAF") score between 55-60, (R. 324, 330, 332, 410, 414, 431, 433, 443), which indicates only moderate symptoms or moderate difficulty in social or occupational functioning.[3] As the ALJ correctly observed, such a rating is inconsistent with Dr. Fisher's opinion that plaintiff is disabled.

Further, Dr. Fisher's opinion of disability is contradicted by plaintiff's activities of daily living. Plaintiff volunteers at his church teaching religious classes and helping the homeless, he assists with home-schooling his children, he practices

---

[2]A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §404.1527(d)(2). For reasons explained herein, Dr. Fisher's opinion fails to meet this standard.

[3]The GAF scale, designed by the American Psychiatric Association, is used by clinicians to report an individual's overall level of mental functioning. The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health to illness. The highest possible score is 100 and the lowest is 1. A score between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or any moderate difficulty in social, occupational or school functioning (e.g., few friends, conflicts with peers or co-workers). Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 2000).

Taekwondo, and he assists with household chores such as taking out the trash, cooking, vacuuming, cleaning, mowing the grass and laundry. (R. 132-33, 190, 282, 317, 323-24, 431, 439, 443).

Finally, Dr. Fisher's opinion that plaintiff is disabled conflicts with the results of Dr. Stanley Nadulek's consultative psychological evaluation of plaintiff. Dr. Nadulek found that plaintiff "seem[ed] normal from the perspective of productivity, relevance and coherence", (R. 285), his thoughts were clear, coherent, well organized and relevant, he was able to form concepts well, had good common sense, did not have any difficulty with recent or past memory, had fair judgment, and had emotional reactions that were relevant to the situation. (R. 285-87). Dr. Nadulek concluded that plaintiff's impairment did not affect his ability to understand, remember and carry out instructions, and he had only moderate limitations in his ability to interact appropriately with others and to respond appropriately to work pressures and changes.[4] (R. 289).

_____

[4]The ALJ indicated that he gave great weight to Dr. Nadulek's examination findings and functional assessment. (R. 15). Despite Dr. Nadulek's benign examination findings and assessment that plaintiff had only moderate functional limitations in interacting with others and responding appropriately to certain work situations, he inexplicably noted at the end of his report that it would be extremely difficult for plaintiff to be gainfully employed. (R. 288). The ALJ addressed Dr. Nadulek's inconsistent conclusion by stating that plaintiff's moderate limitations were appropriately accounted for in the RFC Finding. (R. 15). The court agrees that the ALJ accounted for plaintiff's moderate limitations in interacting with others and responding appropriately to certain work situations by restricting him to work involving simple decision making and simple instructions and precluding him from intensive supervision, close interaction with co-workers and any interaction with the general public.

In sum, the ALJ considered the disability determination by the VA and Dr. Fisher, but properly concluded that such determination was not entitled to controlling weight. The ALJ fully explained why he rejected the VA's disability determination, and this court finds his decision is supported by substantial evidence.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

Gustave Diamond
United States District Judge

cc: Kelie C. Schneider, Esq.
Robert Peirce & Associates, P.C.
707 Grant Street, 2500 Gulf Tower
Pittsburgh, PA 15219

Michael Colville
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)